**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 6 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10234 |
| Plaintiff-Appellee, | D.C. No. 1:15-cr-160-LGO-SKO-1 |
| v. | |
| ROBERT FARRACE, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted January 9, 2020
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,** District
Judge.

We write primarily for the parties who are familiar with the facts. Robert

Farrace was convicted by a jury on three counts of wire fraud under 18 U.S.C.

§ 1343 in relation to the short sale of one of his properties to himself via a shell

company and the attempted short sale of a second property by the same method.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\** The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

He was sentenced to twenty-four months' imprisonment and ordered to pay a judgment of forfeiture in the amount of $128,245. On appeal, Farrace argues that the district court made several errors at trial, during sentencing, and in ordering the forfeiture judgment.

I.      Jury Instructions

Reviewing *de novo*, we conclude that the district court properly declined to provide a jury instruction on fraud by omission pursuant to our decision in *United States v. Shields*, 844 F.3d 819 (9th Cir. 2016).

In cases of wire fraud premised on a material omission, the district court must instruct the jury that to convict the defendant, it must find the defendant had an independent duty to the defrauded party to disclose the omitted information. *See Shields*, 844 F.3d at 822-23. But in fraud cases premised on misrepresentations, including those that involve half-truths, the government is not required to prove such a duty. *See, e.g.*, *United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015) (concluding that fraud cases based on affirmative misrepresentations, including affirmative "misleading half-truth[s]," do not require the government to prove a duty to disclose (citation omitted)); *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986) (recognizing that misrepresentation fraud can be premised on "deceitful statements or half-truths" and emphasizing

that "[p]roof of an affirmative, material misrepresentation supports a [fraud conviction] without any additional proof of a fiduciary duty").

We disagree with Farrace's contention that the government tried his case as both an affirmative misrepresentation and an omissions fraud case. While the indictment contains language alluding to both misrepresentation and omissions fraud, the government abandoned its theory of fraud by omission prior to trial and the jury was never read the indictment. The government's focus throughout trial was not on Farrace's silence, but on how he created a misleading impression. *Cf. Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000-01 (2016). The district court's jury instructions therefore did not run afoul of *Shields* or *United States v. Spanier*, which both involved omissions fraud. *See Shields*, 844 F.3d at 822-23; *United States v. Spanier*, 744 F. App'x 351, 353-54 (9th Cir. 2018).

We also reject Farrace's claim that the jury instructions constructively amended the indictment. The government included both misrepresentation fraud and omissions fraud in the indictment, and permissibly narrowed its fraud theory before trial. "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other

means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985) (citations omitted).

## II. Exclusion of Evidence

"[W]e review the district court's exclusion of evidence for abuse of discretion, . . . [but] review *de novo* whether an evidentiary error rises to the level of a constitutional violation." *United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013) (citations and internal quotation marks omitted).

Farrace argues that the district court violated his constitutional rights by excluding evidence that he did not have the specific intent to defraud. *See United States v. Treadwell*, 593 F.3d 990, 996 (9th Cir. 2010). But the evidence Farrace highlights was irrelevant to this defense because it went to the question of the loss his short sale caused to his mortgage lenders, which is a separate question from whether the sale itself was fraudulent. Intent to cause loss is not an element of the crime of wire fraud. *See id.* at 996 ("Section 1343 requires that one specifically intend 'to deprive' the victim of money or property, but one can intend to 'deprive' a victim of property within the meaning of the statute without intending to cause pecuniary loss."); *United States v. Oren*, 893 F.2d 1057, 1061-62 (9th Cir. 1990) (rejecting defendant's argument that the Government "had to show that he intended to cause actual loss").

Farrace also argues that the district court erred in excluding evidence that his misrepresentations were not material to the lenders. *See United States v. Lindsey*, 850 F.3d 1009, 1011 (9th Cir. 2017). But the district court permitted Farrace to present objective materiality evidence regarding the general lending industry, which was admissible under *Lindsey*. *Id.* at 1014-16. The excluded evidence Farrace identifies pertains to the individual lenders' specific behavior and actual reliance on Farrace's statements, which are irrelevant to the materiality inquiry. *See id.* at 1012 ("[E]vidence of the general lending standards applied in the mortgage industry is admissible to disprove materiality, but evidence of individual lender behavior is not admissible for that purpose.").

The district court acted within its discretion to exclude the irrelevant evidence Farrace highlights on appeal.

III. <u>Sentencing Enhancements</u>

a. *Sophisticated Means*

The district court made adequate findings to support its application of the sophisticated means sentencing enhancement because it expressly adopted the Presentence Report ("PSR") in its statement of reasons. *See United States v. Romero-Rendon*, 220 F.3d 1159, 1161 (9th Cir. 2000) ("[A] district court may rely on an unchallenged PSR at sentencing to find by a preponderance of the evidence that the facts underlying a sentencing enhancement have been established."

(citation omitted)). Farrace's objections to the sentencing enhancement were really claims of innocence as to the crime, which were already disposed of by the jury's verdict.

Further, the district court did not abuse its discretion in applying the sophisticated means enhancement. We routinely emphasize that "[c]onduct need not involve highly complex schemes or exhibit exceptional brilliance to justify a sophisticated means enhancement." *See, e.g.*, *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 2013). The commentary to the Sentencing Guidelines specifically contemplates conduct like Farrace's in discussing the applicability of the enhancement. *See* U.S.S.G. § 2B1.1 cmt. n.9(B) ("Conduct such as hiding assets or transactions, or both, through the use of fictitious entities [or] corporate shells . . . ordinarily indicates sophisticated means.").

    b. *Abuse of Trust or Use of a Special Skill*

As with the sophisticated means sentencing enhancement, we affirm the district court's findings as to the abuse of trust or special skill enhancement based on its adoption of the PSR. *See Romero-Rendon*, 220 F.3d at 1161. The district court did not abuse its discretion in applying the enhancement because Farrace used his special skills as a real estate attorney and former real estate broker to facilitate his fraud. *See* U.S.S.G. § 3B1.3 (contemplating imposition of the enhancement "based solely on the use of a special skill").

6

c. *Double Counting*

The district court's imposition of both the sophisticated means and abuse of trust or special skill enhancements did not constitute improper double-counting under the Sentencing Guidelines, because "[e]ach of these enhancements accounted for a different aspect of [Farrace's] offense and were separately authorized and intended by the Guidelines." *See United States v. Stoterau*, 524 F.3d 988, 1001 (9th Cir. 2008). The sophisticated means enhancement accounted for Farrace's utilization of Dignitas, a shell company, to obscure the fact that he was selling his homes to himself. *See* U.S.S.G. § 2B1.1 cmt. n.9(B). On the other hand, the abuse of trust or special skills enhancement was imposed based on Farrace's utilization of his skills as a real estate lawyer and former broker to conduct the fraud and navigate the fraudulent real estate transactions. *See* U.S.S.G. § 3B1.3 cmt. background.

d. *Intended Loss*

The district court imposed an 8-level sentencing enhancement for a $128,245 "intended loss" based on Farrace's short sale of the Roseburg property.

Farrace first contends that the district court erroneously relied on his "gain" as a measure for loss under U.S.S.G. § 2B1.1(b)(1). We disagree. The district court properly couched its loss finding in terms of "intended loss," and while it

referenced actual and intended loss numerous times during Farrace's sentencing hearings, it never referenced "gain."

We agree with Farrace, however, that the district court clearly erred in finding the "intended loss" amount to be $128,245—the difference between the outstanding mortgage Farrace owed to the lenders on the Roseburg property and the short sale price. *See United States v. Thomsen*, 830 F.3d 1049, 1071 (9th Cir. 2016). Farrace was aware in 2010 that California's anti-deficiency laws prevented lenders from recovering any "deficiency" in either a short sale or a nonjudicial foreclosure. *See* Cal. Code Civ. Proc. §§ 580d, 580e(a), 726(a) (2010). Because the value of the Roseburg property had fallen substantially since Farrace obtained his mortgage, Farrace was already in default, and foreclosure was imminent, it is undisputed that the lenders would not have recovered the full amount of the existing mortgage, even if they had rejected the Dignitas short sale offer and instead proceeded with a foreclosure sale or a short sale with a different buyer. Accordingly, all parties understood that the most the lenders could have theoretically recovered in this instance was the amount from an arm's-length short sale or from a foreclosure sale. We hold that the expected amount from such an arm's-length transaction—rather than the existing mortgage value—should have served as the baseline for the district court's intended loss calculation. We therefore vacate Farrace's sentence, and remand for resentencing to allow the

8

district court to make specific findings as to the intended loss enhancement using the correct baseline.

IV.    Order of Forfeiture

The district court's order of forfeiture in the amount of $128,245 does not reflect proceeds Farrace obtained as a result of his criminal conduct. *See* 28 U.S.C. § 2461; 18 U.S.C. § 981(a)(1)(C) (authorizing forfeiture of "property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" certain enumerated offenses (including wire fraud)). We have limited criminal forfeiture "to that portion of [the defendant's] property that the government proved by a preponderance of the evidence was the proceeds obtained as a result of the activities for which he was convicted." *United States v. Garcia-Guizar*, 160 F.3d 511, 519 (9th Cir. 1998). The district court concluded that any actual loss suffered by the lenders was caused by the nationwide economic and housing downturn. *Cf. id.* at 519. Accordingly, the district court improperly ordered Farrace to pay a forfeiture judgment.

V.    Conclusion

For all the foregoing reasons, we **AFFIRM** Farrace's conviction. Although we affirm the district court's imposition of the sophisticated means and abuse of trust or special skills sentencing enhancements, we **VACATE** and **REMAND** for resentencing, to give the district court the opportunity to make specific findings

9

regarding the intended loss enhancement in accordance with the proper baseline set forth above.  Finally, we **REVERSE** the district court's forfeiture order.

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED FOR RESENTENCING**